# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **PATRICIA ANN CHANDLER,** | ) ) ) ) | Civil No.: 5:13cv00078 |
| *Plaintiff,* | ) ) |  |
| v. | ) ) | REPORT AND RECOMMENDATION |
| **CAROLYN W. COLVIN**, Commissioner of the Social Security Administration | ) ) ) ) ) |  |
|  | ) | By: Hon. James G. Welsh |
| *Defendant* | ) ) | U. S. Magistrate Judge |

Patricia Ann Chandler brings this civil action (docket #3) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her current application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416(i) and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

Along with her Answer (docket #6), the Commissioner filed a certified copy of the Administrative Record ("R.") (docket #7) which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Each party has moved for summary judgment (docket #11 and #14) and filed a supporting memorandum of points and authorities (docket #12 and #15). Oral argument was conducted on June 26, 2014 with plaintiff's attorney and defendant's attorney each appearing telephonically (docket #18). By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. ADMINISTRATIVE AND PROCEDURAL HISTORY

### A. 2008 DIB Application

Claiming a disability onset date of June 22, 2008 due to asthma, ventral hernia, hypothyroidism diabetes, depression, lumbar degenerative disc disease and obesity, Ms. Chandler filed her first DIB application on July 22, 2008 (R. 18, 77, 79, 99, 197). Her claim was denied initially in December 2008, on reconsideration in April 2009, and by written decision dated February 26, 2010 (R.77-87) following an administrative hearing (R. 18, 77-87).

Based on his consideration of the medical record the ALJ concluded that Ms. Chandler's degenerative disc disease of the lumbar spine and obesity were *severe* [1] impairments (R. 79-80); however, he concluded these impairments neither met nor equaled the requirements ("motor, sensory or neurological deficits") of listing 1.04 [2] (R. 80-81). In making his evaluation of the severity of Ms. Chandlers symptoms, including her pain, the ALJ additionally considered the factors described in 20 CFR § 404.1529(c) and concluded her statements concerning the intensity, persistence and limiting effects of her symptoms were "not fully credible" (R. 81-83). Turning again to the medical evidence, the ALJ found the stage agency medical assessments in April 2009 and in December of the same year to be "based on credible objective and subjective evidence in the record" and gave them "great evidentiary weight in [his] decision" (R. 83). In

---

[1] A severe impairment is "any impairment or combination of impairments which significantly limits [an individual's] physical or mental ability to do basic work activities." 20 CFR § 404.1520(c).

[2] "**Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: (A.) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); OR (B.) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; OR (C.) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 CFR, Part 404, Subpart P, Appendix 1, § 1.04.

contrast, he gave only "limited weight" to the May 2009 assessment of Ms. Chandler's treating physician (Dr. Timothy McLaughlin) on the basis of its inconsistency with his February 2009 assessment, its failure to take into account her lack of any follow-through with recommended physical therapy treatment, its significant inconsistency with his records ("including his own prior observations and the recommendations of the UVa Orthopaedics Department"), its lack of support in any medically acceptable clinical or laboratory findings, and its apparent basis in Ms. Chandler's self-reported limitations (R.84-85).

Turning next to consideration of Ms. Chandler's residual functional capacity, the ALJ concluded the "most persuasive evidence of [her] residual functional capacity was provided by the [state agency medical] experts," [3] (R. 83, 85). Accepting their assessments, the ALJ found Ms. Chandler retained the ability to perform light work [4] requiring only occasional postural activities, no climbing, no production-rate work requirement and the option to work while seated for 15 minutes each hour (R. 81, 83, 85). On the basis vocational testimony at the administrative hearing, the ALJ concluded that the plaintiff was unable to perform her past relevant work, but she was able to make a successful adjustment to other work that exists in significant numbers in the national economy [5] and was, therefore, "not disabled" (R. 85-86). *See* 20 C.F.R. § 404.1569a, 20 CFR § 404.1560; Social Security Ruling ("SSR") 00-4p.

---

[3] State agency medical and psychological consultants are "highly qualified ... experts in the evaluation of the medical issues in disability claims under the Social Security Act." 20 C.F.R. § 404.1527(e)(2)(i).

[4] Light work" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time it generally involves some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires standing or walking, off and on, for a total of approximately six hours of an eight hour workday with intermittent sitting. Social Security Ruling ("SSR") 83-10.

[5] As representative examples, the vocational witness cited jobs such as mail sorter (non-government) and counter clerk (R. 86).

The Appeals Council subsequently denied her review request on October 28, 2010 (R. 18, 92-97), and Ms. Chandler did not seek court review (R. 18).

### B. 2011 DIB Application

Instead, she filed a new DIB application on January 22, 2011, in which she alleged the same June 22, 2008 onset date and raised essentially the same exertional and non-exertional medical issues (R. 184-187, 197, 201). Her current claim was denied initially on April 4, 2011 (R. 98-108, 125-135). On September 2, 2011 it was denied on reconsideration (R.109-122, 138-144), and following a June 20, 2012 administrative hearing (R. 37-73) it was denied by written decision of an administrative law judge ("ALJ") dated June 29, 2012 (R. 18-29). Once again the Appeals Council denied her review request (R. 1–5), and the unfavorable ALJ decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Pursuant to a thorough and detailed assessment of the record, in his written decision the ALJ following the agency's five-step decisional process and made a series of well-supported evidentiary findings and conclusions consistent with the prior administrative decision (R. 18-30). These included finding that the prior decision had fact and circumstance relevance to the unadjudicated period pursuant to Acquiescence Ruling (AR) 00-1(4). [6] He noted that Ms. Chandler's earlier application had significant time-wise proximity to her current application; concluded that her earlier residual functional capacity assessment was consistent with the current evidence, and found that the earlier assessment in fact "remain[ed] entirely correct" (R. 26-27).

---

[6] In AR 00-1(4), the agency acquiesced in the Fourth Circuit's decision in *Albright v. Commissioner*, 174 F.3d 473 (4th Cir. 1999), and directs an adjudicator considering a subsequent disability claim "consider the prior [decision] as evidence and give it appropriate weight in light of all relevant facts and circumstances, including whether the prior decision was based on facts likely to change over time; the likelihood that material facts would change, given the period of time between the prior decision and subsequent claim; and the extent that new evidence provides a basis for a different finding with respect to the period being adjudicated in the subsequent claim.

4

Also consistent with the prior decision, the ALJ confirmed Ms. Chandler's insured status through December 31, 2013; her lack of any work activity during the relevant period; her same *severe* impairments (degenerative disc disease of the lumbar and thoracic spine, and obesity); the same non-severe nature of her multiple other alleged impairment; the same absence of a listing-level impairment, her same inability to perform her past relevant work, and her same retained functional ability to perform the same limited range of light work activity, given her vocational profile [7] (R. 20-28).

## II.    SUMMARY AND RECOMMENDATION

Based on a thorough review of the administrative record and for the reasons herein set forth, it is **RECOMMENDED** that the plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, an appropriate final judgment be entered **AFFIRMING** the Commissioner's decision denying a period of DIB benefits, and this matter be **DISMISSED** from the court's active docket.

## III.    STANDARD OF REVIEW

The court's review in this case is limited to determining whether the factual findings of the commissioner are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of the evidence. *Laws v. Celebrezze*,

---

[7] The plaintiff was born in 1958; she was forty-nine years of age at the time she alleges she became unable to work, which for vocational purposes effectively places her in the category of persons closely approaching advanced age (R. 27). 20 CFR 404.1563. She has a high school equivalent education (R.27), and all of her past relevant work was as a production worker at Hollister Co. between 1997 and 2008 (R. 43-44, 27, 82, 85, 106, 202).

5

368 F.2d 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642). The court is "not at liberty to re-weigh the evidence … or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## IV. DISCUSSION

As the plaintiff acknowledges in her memorandum (docket #12, p.1), "due to the prior decision, the period of disability being considered begins on February 27, 2010," one day after the previous ALJ's adverse decision on Ms. Chandler's first DIB claim. To a significant degree, therefore, her claim of reversible administrative error focuses on the nature and extent of her low back condition and on the decisional weight given by the ALJ to her own testimony (R. 42-71) and to the opinion evidence of Dr. Timothy McLaughlin, her primary care physician (R. 729-733, 742-746) and the non-physician opinion evidence of April Pierce, a nurse practitioner (R. 882-886). (*See* docket #12, pp. 2-3).

### A. Credibility Determination

On appeal the plaintiff argues that the ALJ's assessment of her credibility as "only fair" was insufficient and erroneous (docket #12, pp.6-7); however, this claim of error is contradicted by the record. The ALJ appropriately and accurately summarized her testimony, including her complaints of pain and other symptoms, her daily activities, and her treatment history (R. 23-27). In making his credibility assessment, the ALJ took note that Ms. Chandler walked without the use of any assistive device, was receiving only conservative treatment, was subject to no medical restriction on her activities, had refused to participate in recommended physical therapy, and participated in a wide range of her daily activities (R. 25-26). Using the required two-step

6

process (*see Craig v. Chater*, 76 F.3d 585, 594) (4th Cir. 1996)), the ALJ then made his multi-factor credibility determination (R. 24-26).

On review, this court is bound to accept this credibility determinations absent "exceptional circumstances." *Eldeco v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) ("When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'") And exceptional circumstances come into play only "where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id*. (internal citations omitted).

Here there is no such "exceptional circumstance." Ms. Chandler's credibility was evaluated using the required two-step process. The ALJ provided a logical basis for his conclusions. Substantial evidence in the record supported his conclusion, and consistent with the court's obligation "to give great deference" to the ALJ's credibility determinations." *Caudle v. Colvin*, 2013 U.S. Dist. LEXIS 155962, *42 (EDVa. Oct. 15, 2013) (citing *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)), this claim of error is totally meritless.

### B. Residual Functional Capacity Determination

On appeal, the plaintiff also asserts administrative error on the basis of the ALJ's rejection of a 2010 functional assessment by her treating physician and a 2012 functional assessment by a nurse practitioner to whom Ms. Chandler had been referred by her treating physician (docket #12, pp.5-6). Both providers expressed the opinion that Ms. Chandler's low back condition and attendant functional limitations effectively restricted her to less than a sedentary level of work activity on a regular and sustained basis (R. 729-733, 882-886).

7

Although the medical record documents the plaintiff's medical history of low back pain and obesity (R. 79), the results of multiple examinations and diagnostic studies suggest a less than incapacitating condition. For example, A lumbosacral radiographic study (6 images) at Augusta Health on July 17, 2010 demonstrated normal vertebral alignment, normal disc space and height except for "mild narrowing" of the T/11-12 through L/1-2 disc spaces with "small" anterior osteophytes (R.505, 663-664). The results of lumbar and thoracic MRIs one month later at UVa Imaging similarly demonstrated only a "minimal" thoracic spinal curve to the right, "normal" lumbar spine alignment, and only "mild" degenerative disc changes across the lumbar spine, greatest at L5/S1 (R. 501-503, 660-662, 576-583).

A UVa Health Orthopaedic Clinic examination by Woogin Cho, MD, in mid-September 2010 and his attendant review of the X-ray and MRI studies resulted in the same modest findings (R. 543-546, 575, 691-693). *Inter alia*, he found the "little bit" of right disc bulging to be "really mild," normal deep tendon reflexes, intact motor and sensory systems, "no evidence of instability" on flexion or extension, "minimal" leftward curvature of the lower lumbar spine, and no clinical evidence of spinal cord compression R. 575, 691). He noted that she used no ambulatory aids; he described her back pain to be "axial" in nature; he recorded her height and weight (5'4" and 351.4 lbs.), and he recommended she start an aerobic exercise and weight loss program (R.692).

Dr. McLaughlin's office records for same period record her complaints of low back pain; however, they also report that she exhibited normal strength, gait and sensation (*e.g.*, R. 588, 591, 594, 600, 806), and most importantly his treatment notes fail to demonstrate a totally disabling medical condition (*See e.g.* 504, 510, 585). For example, when asked about getting disability benefits on August 23, 2010, Dr. McLaughlin suggested she discuss the matter with a

8

back specialist (R. 593). One day later Ms. Chandler again raised the disability issue, and Dr. McLaughlin once again appears to have been less than fully supportive, explaining that she needed to complete the recommended exercise and weight loss therapy and that it was difficult to make a disability assessment until she had followed-through with this regime designed to help her with her back pain (R. 599). At the time the plaintiff was using only a non-steroidal anti-inflammatory (Celebrex or Mobec) as a pain reliever (R. 585, 599), and irrespective of the Doctor's advice, Ms. Chandler declined even to begin low impact physical therapy (R. 585, 599).

In late December 2010 Ms. Chandler had Dr. McLaughlin fill-out a questionnaire (R. 729-734) for submission in connection with her new DIB application. Therein, he described the plaintiff's medical issue as "low back pain" with a degenerative disc disease diagnosis in August 2010 (R. 585, 729, 742). In his opinion she remained capable of low stress work which permitted her to sit or stand no longer than fifteen minutes at a time, walk no more that two or three city blocks, rarely lift and carry more than ten pounds, and rarely perform postural activities; he also noted that Ms. Chandler had no emotional factors which would impact her ability to work (R. 729-733, 743-746). [8]

*Inter alia*, on May 15, 2009 in a medical evaluation report, Dr. Samuel Hostetter, concluded Ms. Chandler was functionally able to participate in employment and training activities (R. 734-737). The following year, when she was seen for the last time at UVa Orthopaedic Clinic, Ms. Chandler demonstrated "no mechanical or neurogenic debilitating conditions which are spine [related]" (R. 877).

---

[8] There is no indication in the record that Dr. McLaughlin's opinion concerning Ms. Chandler's residual functional capacity was based on a functional capacity evaluation or other measurement of her ability to perform the physical demands of a job or any evaluation of her cognitive abilities.

9

Two years later as part of a pain-related clinical examination, Dr. Jonathan Salahshour (UVa Medical Center) took note of these Orthopaedic Clinic findings and the "mild multi-level degenerative changes" that had been earlier demonstrated on MRI (R. 877, 691-693). Both his examination notes and his continued conservative treatment regime suggest no medically significant change in Ms. Chandler's condition between the last time she was seen in the UVa Othopaedic Clinic in 2010 and Dr. Salahshour's UVa Pain Clinic examination on April 20, 2012 (R.876-880).

Ten days later April Pierce, a nurse practitioner, completed a new supportive functional capacity questionnaire for submission in support of the plaintiff's current application (R.882-886). Therein, Nurse Pierce re-reported the same August 2010 MRI [9] results, the same "low back pain" diagnosis, the same debilitating pain-related complaints described by the plaintiff since 2008, and essentially the same functional ability opinion given by Dr. McLaughlin in December 2010 [10] R. 882-886). Furthermore, the medical record contains no suggestion that Nurse Pierce's opinion is based on the results of any clinical and other diagnostic testing, and as she acknowledges Ms. Chandler's chronic pain condition, its prognosis, treatment, response, and their work-related implications were "being followed by UVa Pain Clinic" (R. 882).

In his decision the ALJ expressly considered Dr. McLaughlin's and Nurse Pierce's functional capacity assessments, along with those of the state agency medical reviewers (R. 26). In doing so, he concluded that Ms. Chandler was more limited than the assessments of the state agency and physicians, and he "rejected" the extensive restrictions in the opinions of Dr. McLaughlin and Nurse Pierce. As the ALJ noted, these restrictions were "largely" due to low

---

[9] (R. 660-662).

[10] (R. 742-746).

back pain, were inconsistent with the record as a whole, and were not supported by substantial evidence (R. 26). His claim of administrative error, therefore, is also without merit. This claim of administrative error by the plaintiff, is, therefore without merit.

### C. *ALJ MISSTATEMENT*

On appeal the plaintiff also takes issue with the ALJ's mistaken attribution of a 2010 statement by a UVa orthopedist physician to Dr. Salahshour. In Dr. Salahshour's office note of April 20, 2012, he includes the following statement, "at this time, I see no mechanical or neurogenic debilitating conditions which are spine [related] (R. 26). The plaintiff correctly points-out, that this was in fact a 2010 finding by a UVa Orthopedics Clinic physician.[11] At most, this misstatement, however, is harmless and does not require remand. Since the statement was used by Dr. Salahshour within quotation marks (R. 877), it was reasonably intended to summarize Ms. Chandler's medical history and orthopedic status at the time of her last UVa Orthopaedics Clinic visit two years previously. In this instance, the ALJ's erroneous reference to the quotation was in effect negated by Dr. Salahshour's clinical examination results that demonstrated no medically significant change in her condition between 2010 and 2012. Moreover, neither the statement's author nor the date of its creation was critical to a proper analysis of any part of the plaintiff's claim, given the many bases upon which the ALJ discounted her credibility and her functional capacity evidence. *See generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

---

[11] On September 14, 2010, the plaintiff was evaluated by Adam Shiner, MD, an orthopedist in the UVa Orthopaedics Clinic (R..691-693). In connection with that orthopedic evaluation, Dr. Shiner reported , "at this time, I see no mechanical or neurogenic debilitating conditions which are spine [related]" (R, 692).

11

## V. PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions, and recommendations:

1. The factual findings of the Commissioner are supported by substantial evidence;

2. The factual findings of the Commissioner were reached through application of the correct legal standards;

1. The plaintiff has the following severe impairments: degenerative disc disease and obesity;

2. The plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR Pt. 404, Subpt. P, Appx. 1;

3. The ALJ appropriately considered the cumulative effects of her impairments;

4. The decisional weight given by the ALJ to the plaintiff's testimony is supported by substantial evidence;

5. In making his credibility assessment, pursuant to 20 CFR § 404.1529(a-c) the ALJ considered the medical evidence supporting the plaintiff's alleged impairments and symptoms, her daily activities, the fact her impairments would likely result in the alleged symptoms, the minimal objective and clinical findings, and the fact that allegations regarding the intensity, persistence, and limiting effects were inconsistent with the scope of her activities and the objective and clinical findings;

6. The treating source medical opinion of Dr. Timothy McLaughlin, the plaintiff's primary care physician, is not entitled to "controlling weight;"

7. The treating source medical opinion of Dr. McLaughlin is not well-supported by medically acceptable clinical and laboratory diagnostic techniques;

8. The acceptable medical source opinion of April Pierce (a nurse practitioner), is not well-supported by medically acceptable clinical and laboratory diagnostic techniques;

9. The plaintiff has not met her burden of proving a disabling condition on or before he date of the ALJ's decision; and

10. The final decision of the Commissioner should be affirmed.

## VI. TRANSMITTAL OF THE RECORD

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. NOTICE TO THE PARTIES

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED**: This 8th day of September 2014.

*s/ James G. Welsh*
U. S. Magistrate Judge